And we'll hear argument next in Tianjin Port Free Trade Zone International versus Tiancheng Chempharm, 18-1918. Good morning, Your Honor. May I please record? My name is Hugh Chang. I'm an attorney for a parent respondent. The key issue in this case is that we understand there are only limited circumstances for us to challenge under New York Conventions. So it actually sets forth seven grounds for respondents to challenge. So we base it on the first two. Number one is that whether parties agree to arbitrations. And second, whether or not there's a proper notice. So the district court judge and also petitioner highly rely on one case. Europe Car is a Second Circuit case, 1998. So in that case, whether or not contract is fraudulent, so have to wait during arbitrations. So that case will not apply in this scenario. The reason is that for respondent in Europe Car case, they participate during the arbitration trial. Your argument is you didn't participate because you didn't receive notice, so Europe Car doesn't apply. Yes. We are not. The issue isn't whether you received notice. The issue is whether you were sent notice in a way reasonably calculated to ensure that you got it. Yes, that's going to be a second issue. Well, no, I'm asking you, I'm stating a principle of law, and I'm asking if you agree with it. Yeah, we agree with that. It doesn't matter if you didn't get notice as long as the petitioner made reasonable efforts to see to it that you got notice. Yeah, that's a second issue that we're going to address. Okay. Can I ask a question? Sure. About the forgery argument. I'm trying to make sure I understand the argument. The argument is that the particular document that contains the arbitration clause is a forgery? Yes. There's no argument that there wasn't actually a deal made to purchase certain materials and to pay a particular price for them? Yeah, that's not between petitioner and respondents. Because I didn't see anywhere in the – I'm sorry, you're saying there was a deal but it wasn't with you? Yes. Okay. Because I didn't see anywhere a statement, an affidavit, from your side saying we never bought these materials, we never got them, the price was different if there was an agreement or we paid for it, that there's nothing that goes to the merits of the dispute, right? It's just a question of is the document containing the arbitration agreement real? And if it wasn't, then there is no arbitration agreement. Yes. As far as my client informed me, my client have agreement with their supplier, and the supplier have agreement with the petitioner. The contract was – so based upon the contract was signed in December of 2013, arbitration was not commenced until May of 2015. So that's a year and a half. Okay, so my client informed me there's actually a case in China between supplier and petitioner. And that case was not going anywhere. So petitioner decided to, okay, to have arbitration case. And so whoever signed the contract was not even left the country. And he is an American citizen. Okay. So we are not arguing about content of the contract. We're only arguing about the first ground to challenge whether or not there's agreement to arbitration. Since the contract was – since contract was fabricated, so we never actually agreed to – okay. So we are not arguing about content, purchase price, or anything. So – and then this case is quite different with the Euro car. Euro car. So in that case, respondent, they argue they have a 1979 agreement between the supplier and importer in 1988. And so party participate arbitration. So in Second Circuit, I believe it's correct rule that you have to wait during arbitration. You cannot talk about contract anymore while we do confirmation of arbitration award. But – and I know that you're going to get to the notice part, Mr. Cheng. Yes. That seems to be a precondition of your – the argument you're making now. But if you had received notice or if there had been a reasonable attempt to notify you and so on. Sure. And you just – your client just refused to show up notwithstanding the notice. That – why wouldn't Euro car still apply? Okay. So what about – let me address the second issue because I think the two issue is somewhat related. Yes. Okay. So the award was by arbitration organization called China International Economy and Trade Arbitration Commissions. So in a reasoning of arbitration, it mentions six times about notice. The first notice was sent May 13th of 2015. And second notice was sent June 17th of 2015. And total six. And four of them was sent out by – it's called express mail service. And then tribunal was verified and concluded as a duly served. So actually there's two case. The service is – notice was sent through postal service. Those are notice for arbitration payment invoice. One is sent through by postal service and both case was being returned. And the language that recipient is no longer work there. So arbitration tribunal didn't – okay. Which carrier of express mail? And what's the checking number, date of delivery, and who signed for it? And based upon the country dating service, there was two times sent by postal service. And it said recipient didn't work there anymore. So actually the service was sent to individual or sent through corporate entity. It never been sent forth. Wasn't there one that was sent – I'm not sure that I completely understand what you're saying right now. But I thought that there was one notice that was sent to a Brewer Avenue address that was listed with the New York Secretary of State. Yes. I believe – What was defective about that? Okay. I believe there are three address petitioner mentioned about. And I'm asking you to focus on the one that was listed with the New York Secretary of State, the Brewer Avenue address. Uh-huh. So my client told me they never receive it. I'm sure my client told you that, but what's defective about the notice? As a legal matter, what was defective about that notice? Okay. That mail service was sent through express mail, and I don't know which carrier it is. So let's say that it was sent by mail, express mail, to the Brewer Avenue address that is listed as your client's address with the New York Secretary of State, right? What is defective about that? What's defective about that is that, okay, I thought it was supposed to be sent by some sort of a verified mail. So it seems to me – Mr. Chen, it's okay. It's okay if you tell me that the answer is that there was nothing defective about it.  I think that's defective to – for me, hypothetically, it seems like – I'm not asking you a hypothetical question. Uh-huh. What – and it's okay to say there was nothing defective. Okay. If that's the honest answer, then that's the honest answer. Okay. I go with your answer. No, that's not my answer. What is your answer? What is your answer? It is not defective. Okay. So it seems it was sent to an individual and a person who no longer worked there. And an express mail, I guess by Chinese express mail, it's a company called Shunfeng. I think they probably just left the door. And my client probably received a letter, but it was a former employee, so they never opened up. And that's quite possible. They received – they actually probably received the notice. And so then we're left with the second question, which is the forgery issue that you've already addressed. Is that correct? Yes. Okay. Thank you very much. Thank you. We'll hear from your adversary. Good morning, Your Honors. May it please the Court. Eric Porter for Petitioner Apeli Tianjin Portfrey. This Court has previously held that the burden is a high one for a party that is opposing confirmation of a foreign award. And that stems directly from the importance of the public policy background and reasons for adoption of the New York Convention, which is obviously the importance of enforcing foreign arbitration awards to international business. The burden is entirely on the party opposing that award once the party that is seeking to confirm the award meets its initial burden, which is merely to supply the arbitration award, to supply the agreement that contains the arbitration provision, and to provide a certified translation if one is needed. There's no dispute that that was done here. Therefore, that burden shifted to Tianjin Chem Farm to demonstrate that one of these narrow exceptions under the New York Convention to recognition exists. Exceptions that they are attempting to demonstrate, Your Honors, I think it's clear that they have not met that high burden here. With respect to the notice issue, as Your Honor rightly pointed out, the standard is not actual receipt, which I believe my adversary actually conceded to just now. But the standard is not actual receipt. It's notice reasonably calculated to provide notice of the proceeding and an opportunity to appear. CTAC, the arbitration tribunal, the arbitration entity in China, sent the materials, arbitration materials, to the Conklin Street address, which is the address that Tianjin Chem Farm concedes is their correct address. Some of those materials, not all, a few of those materials were returned, but notably many of the materials were not returned. For instance, the arbitration notice was not returned. The copy of the arbitration rules was not returned. The list of arbitrators was not returned. The arbitration application with the evidence submitted by Petitioner Tianjin Portfrey was not returned. In a good faith effort to ensure that service was sent out, Tianjin Portfrey's counsel in China provided additional addresses, of which one was, as Your Honor noted, the Brewer Street address, which is the address that Tianjin Chem Farm lists with the Secretary of State. And again, counsel has conceded that papers were sent to that location and likely may have been received and simply not opened. So we think there's simply no way to find that notice was not reasonably calculated to be served here in accordance with the due process standards that this Court has recognized. Given that that service was provided, they had the opportunity and the knowledge of this proceeding and an opportunity to appear and contest. Not having done so, this Court's decision in Uropkar is on all fours with the argument that appellant makes here concerning forgery. The Court in Uropkar held clearly that if you're raising a forgery argument, if you're arguing that the underlying agreement that provides for arbitration is a forgery, that is an argument that needs to be raised to the arbitrators. If it is not, then you're barred from raising it in an action brought to enforce that decision. If you did bring it there, then you are barred by the decision that they reached. There is no grounds for distinguishing that here. And I'll note that this is the first time that Tianjin has even acknowledged the existence of Uropkar. There was no attempt made in the underlying district court proceeding by a respondent to address Uropkar, despite the fact that it was in our papers, despite the fact that it was in the district court's decision as the central case on which its forgery conclusion was reached. It wasn't mentioned in their brief on appeal. And I think — And there was no reply brief. And there was no reply brief, Your Honor. Yes. Correct. And we raised it in our response. There was no reply. And I think the reason for that is simple. There is no way to reasonably or in any way unreasonably distinguish — I guess I shouldn't go that far — but reasonably distinguish Uropkar, Your Honor. It's on all fours here. There is no grounds for finding at this stage that this contract was forged. And I should also note, just in terms of the standard of review, Your Honor, I think there was an attempt by Tianjin in its brief to twist the burdens here somewhat, that relying upon this court's language in a prior decision in the case D.H. Blair, which had a line about these types of petitions need to be treated as akin to summary judgment. There was an attempt made, I think, by appellants to say, well, Tianjin hasn't shown that there's no issue of fact here. The procedural attack was very confused. I don't think you need to explain why it was wrong. Okay. Thank you, Your Honor. In that case, I will take any questions that the court may have, but otherwise would yield the rest of my time. Thank you very much. Mr. Chen, you have not reserved any time for rebuttal, so we'll deem this submitted. We'll reserve the decision. The final matter on today's argument calendar, Nation Star Mortgage v. Hunt 18-1299, is on submission, and we'll reserve decisions to that. Court is adjourned. Thank you, Your Honor.